POMEROY and others, superintendents of the poor of Otsego county, *vs.* WELLS.

> The superintendents of the poor cannot file a bill in chancery against the husband to obtain satisfaction of the expenses incurred by the county for the support of his wife, as a lunatic or a pauper, until they have exhausted their remedy at law against him by judgment, and the return of an execution unsatisfied.
>
> Where the separation of the wife from her husband is involuntary, and without fault on her part, any person who furnishes her with necessaries, although against the directions of the husband, may recover therefor in a common law action against him. But if, for any cause, the husband is not legally liable for the support of his wife, the court of chancery has no general jurisdiction to compel him to support her.
>
> County superintendents of the poor should sue in the corporate name given them by the revised statutes, and not in their individual names describing themselves as superintendents of the poor of the county.
>
> The superintendents of the poor are not authorized to receive paupers into the county poor house, to be supported at the expense of the county, unless an order to that effect has been made by the overseers of the poor; or a warrant has been issued for the removal of the pauper to the county poor house as a lunatic.
>
> Where a lunatic is merely to be supported as a pauper, either in or out of the county poor house, the overseers of the poor of the town where such lunatic pauper resides, must enquire into the circumstances, and make an order for relief, as in the case of other indigent persons; and then the superintendents of the county may, in their discretion, provide for the support of such lunatic pauper out of the poor house, if they think proper to do so.

May 19.     THIS case came before the court upon a demurrer to the complainants' bill. The complainants alleged that the defendant, who resided in Plainfield, in the county of Otsego, was married to L. Stillman in 1829, and that from that time both the defendant and his wife had been and still were inhabitants of that county; that in 1830 the defendant's wife became insane and unable to provide for herself, and was provided for by the defendant until December, 1836, when he abandoned her, and refused to provide for her any longer; alleging that he had obtained a divorce from her in the state of Pennsylvania, and that he had no property which by any proceeding could be converted to her support; that in April, 1837, the complainants, as su-

perintendents of the poor of Otsego county, were applied to by the overseers of the poor of the town of Plainfield and others, to take care of the defendant's wife; and they accordingly conveyed her to the lunatic asylum, at Bloomingdale, and maintained her there for about a year; but finding that her derangement was incurable, they had her afterwards placed in their poor house, where she was still maintained at the public expense; that the complainants had expended about $300 for her support and maintenance; that she had no property, and had no friends of sufficient ability to support or take care of her; and that she must remain permanently chargeable to the county of Otsego as a pauper, unless the defendant, her husband, should be compelled to confine her in a suitable place, as a lunatic, and to maintain her. The bill also charged that the defendant, although he pretended that he had no property, but had sold all the property he once had and applied the proceeds to the support of his wife, was in fact seized and possessed of, or was well entitled to, a saw-mill in the town of Plainfield, of the value of four or five hundred dollars, and had personal property held in trust for him, and debts due and payable to him, or to some other persons for his use, to the amount of $1500, or more, if the same could be fully discovered; and that he was of sufficient ability to provide for the safe keeping and suitable maintenance of his wife, &c.; that the defendant, although frequently applied to by the complainants for that purpose, had refused to provide for the safe keeping and support of his wife, or to give them any account of the particulars of his property; and that with a design to avoid and exempt himself from the duty of supporting her, he had conveyed and disposed of his estate, or some portions thereof, to his father or some other person, in trust for himself or for his child or family other than his wife. The bill therefore prayed that the defendant might make a full discovery of his property, whether in his own hands or in the hands of any other person in trust for him; and that he might be decreed to make a suitable allowance and provision out of

his estate for the permanent care and maintenance of his wife, to be secured for her benefit under the order of this court; that he might also be restrained by injunction from parting with or incumbering his property; or that the complainants might have such other relief as the nature of the case might require.

The defendant demurred to the bill for the want of equity, both as to the discovery and relief. And he also assigned as special causes of demurrer, 1st. That it was not alleged in the bill that it had in any competent legal form been adjudged that his wife was a pauper, and chargeable to the county of Otsego, or was a lunatic whom it would be dangerous to permit to go at large; 2d. That it was not alleged that the distinction between town and county poor was abolished in the county of Otsego, so as to make it the duty of the complainants to provide for the custody and support of the defendant's wife; 3d. That it was not alleged that any proceedings had been instituted under the provisions of the statute relative to the relief and support of indigent persons, or relative to the safe keeping of lunatics, to compel the defendant to confine or support her; nor that the discovery sought by the complainants' bill was in aid of any such proceedings which were intended to be commenced; 4th. That no reason was shown in the bill why the complainants could not obtain relief, if they were entitled to any, by a proceeding against the defendant under the statute; 5th. That it was not alleged in the bill that the defendant's wife was in the care or custody of the complainants, as superintendents of the poor, by virtue of any order made in conformity to the provisions of the statute for the relief and support af indigent persons; and 6th. That the remedy of the complainants, if any, was by an action at law against the defendant, or by a proceeding under the provisions of the statute relative to the support of indigent persons, or of the statute relative to the safe keeping and care of lunatics; and that the court of chancery therefore had no jurisdiction of the case.

*E. B. Morehouse,* for the complainants.

*A. Thompson,* for the defendant,

THE CHANCELLOR. Some of the formal objections to the complainants' bill are well taken, and the demurrer must be allowed for that reason, even if this court could grant the relief asked for upon the merits. The county of Otsego is not one of those counties in which the distinction between town and county paupers is abolished in the revised statutes. And though it is probable the supervisors have abolished the distinction, as they are authorized to do by the 24th section of the title of the revised statutes relative to the relief and support of indigent persons, (1 *R. S.* 620,) so as to make the defendant's wife a county charge instead of a charge upon the town in which she and her husband are settled, the fact that such distinction has been abolished no where appears in the bill. In the absence of such an allegation, the overseers of the poor of the town of Plainfield, instead of the county superintendents, appear to be the proper persons to compel the defendant to provide for the support and maintenance of his wife, if she is a pauper so as to become a public charge.

The statute also declares that the superintendents of each county shall be a corporation. And where it is proper for them to bring a suit in their official capacity, it ought to be in the corporate name given them by the statute ; and not, as in this case, in their individual names, with the addition of their official description. (*See* 1 *R. S.* 617, § 16.) But as these are mere matters of form which may be obviated by amendment of the bill, I proceed to the examination of the other questions in the cause.

It is stated in the bill, that the complainants received a petition from the overseers of the poor of the town of Plainfield, and divers other citizens of that town, stating the destitute situation of the defendant's wife, and that she was a lunatic, and commending her to the care and protection of the complainants. From this statement I infer that

there never was in fact any *order* made by the overseers of the poor, or either of them, for her removal to the county poor house, to be supported at the expense of the county as a pauper, as directed by the statute, (1 *R. S.* 622, § 31, 39.) And without such an order, or a warrant from two justices, under the provisions relative to the safe keeping and care of lunatics, I do not find any authority in the statute for receiving her in the county poor house to be supported at the public expense. (*See Flower* v. *Allen*, 6 *Cowen's R.* 654.) I think the defendant's counsel is right in supposing that where a lunatic is to be supported as a pauper, either in or out of the county poor house, the overseers of the poor of the town should proceed to inquire into the circumstances and make an order for relief as directed by the thirty-ninth section of the title relative to the support and relief of indigent persons. And after such an order has been made, the seventy-third section authorizes the superintendents of the county poor house to provide for the support of such lunatic pauper out of the poor house, if they think proper to do so.

The objection that the complainants had a remedy at law, by a summary application to the court of general sessions, to compel the defendant to support his wife, is certainly not well taken ; as the statutory provisions compelling certain persons, who are of sufficient ability, to provide for the support of their indigent relatives, do not extend to the case of husband and wife. The only relatives mentioned in the present statute are parents and children ; the legislature, in the revision, having stricken out grandparents, who were embraced in the statute of Elizabeth. As the common law had afforded an ample remedy for the recovery of the necessary expenses of the wife's support, where the husband had not absconded, by a suit against him in favor of any person who thought proper to furnish her with the means of living, the only summary proceedings authorized against him is a seizure of his property where he absconds.

Upon the merits of this case, however, I think the pres-

ent bill cannot be sustained, even if it was not defective in form.   Where the separation of the wife from her husband is involuntary, and without fault on her part, as in this case, any person who furnishes her with necessaries, even against the express directions of the husband who neglects to provide for her, may by the common law sue the husband therefor, upon his implied promise to pay.  (*Law of Husb. and Wife*, 109.  2 *Kent's Com.* 148.)   If the defendant, therefore, is liable for the support of this woman as his wife, notwithstanding his pretended divorce in Pennsylvania, as I have no doubt he is, if the bill states truly that he had from the time of his marriage been an inhabitant of the county of Otsego, the proper remedy of the complainants was by a suit at law against him, to recover the amount necessarily expended for her support.   The bill shows that he has property which can be reached by execution to satisfy a judgment which may be recovered against him.  But even if his property is all beyond the reach of execution, that is not sufficient to justify the complainants in coming into this court, in the first instance, before they have exhausted their remedy at law.   And if for any cause the defendant is not legally liable for the expenses which have been already paid, or which may be hereafter paid for the support of his wife, this court has no general jurisdiction, in this form, to enforce the performance of a moral obligation, which the law will not recognize as a sufficient foundation for an action.

The demurrer is therefore allowed, and the complainants' bill must be dismissed with costs ; but without prejudice to their rights at law, if they have any.   And as the suit has been commenced by the superintendents in their individual names, and not in the corporate name given them by the statute, they will be personally liable to the defendant for the costs, in the first instance ; and must charge the same in their accounts against the county, according to the directions of the revised statutes on that subject.  (2 *R. S.* 476, § 108.)