# SUPREME COURT.

FREDERICK SCHEIVE, appellant, agt. JOSEPH KAISER and
. others, respondents.

A *bond*, executed in consideration of $350, requiring the obligor to use and appro-
priate that sum for the benefit of the wife of the obligee (the husband and wife
having entered into articles of separation from bed and board), and in considera-
tion of the premises the obligor agreed to keep and maintain and forever support-
the said wife; said bond being conditioned, that the obligor should from time to
to time, use and apply the money for the benefit, and support and maintenance of
said wife as the same should be necessary; and should keep and save said obligee·
forever harmless on account of the support and maintenance of said wife, and save·
and prevent said obligee from any liability for the support and maintenance of said
wife, without fraud, &c.:
*Held*, that the obligee could maintain an action for a breach of that condition of the·
bond which required the obligor, from time to time, to use and apply the $350,
"for the benefit and support and maintenance of said wife, as the same should be·
necessary," although the latter condition which provided for keeping and saving
the obligee harmless on account of such support and maintenance, &c., had not
been broken.

*Erie County, General Term, November,* 1868.

*Before* DANIELS, *P. J.;* MARVIN, BARKER *and* LAMONT, *J.J.*

APPEAL from judgment entered upon the report and decis-
ion of a referee.

Action to foreclose a mortgage. The defendant Kaiser,
executed to the plaintiff a bond reciting that the plaintiff and
his wife had entered into articles of separation from bed· and
board, and that in consideration of the premises the plaintiff
had that day paid Kaiser $350, to· be used and appropriated
by him for the benefit of Frances Scheive (his wife)·; and in
consideration of the premises, Kaiser further agreed to· keep
and maintain and forever support the said Frances Scheive.
It was conditioned in the bond that Kaiser should from time
to time, use and apply the money (the $350)· for the benefit
and support and maintenance of said Frances, as the same
shall be necessary, ahd shall keep and save said Frederick
Scheive forever harmless on account of the· support and main-
tenance of said Frances Scheive, and save and prevent said

Frederick from any liability for the support and maintenance of said Frances, without fraud, &c. The defendant executed at the same time a mortgage to secure the performance of the conditions of the bond, and containing the same conditions.

The defendant took the plaintiff's wife to his house and supported her about four months. The defendant and his family treated Mrs. Scheive in a manner justifying her leaving them, and she did leave; and thereupon the overseers of the poor of Dunkirk took her in charge as a pauper and expended for her support about the sum of $150. The superintendent of the poor then saw the plaintiff, and applied to him to pay the sum expended, and he agreed to do so as soon as he could enforce the collection of the amount out of the bond and mortgage, or as soon as he got the money. Previous to the commencement of this action the plaintiff demanded of the defendant the $350, less the value of the board and expenses incurred for Frances during the time she was supported by the defendant. The defendant refused to pay.

The referee found that Mrs. Scheive was in good health and performed daily labor, except for two weeks, while she was supported by the overseers.

As conclusions of law, the referee found, that at the time the plaintiff made his promise to the superintendent of the poor for the board, &c., there was no legal liability on his part to pay the same. That there had not been any breach in the covenant to save and prevent the plaintiff from any liability for the support and maintenance of the said Frances, as in said bond mentioned and set forth, and that there has been no breach of any covenant in the bond; and he directed judgment for the defendant. The plaintiff filed exceptions and appealed to the general term.

N. H. HILL, *for plaintiff*.

I. The referee disposed of this case on the ground that

the husband was not liable to pay any part of the money advanced by the superintendents of the poor, and therefore there was no breach of the bond, on the authority of the case in *Norton et al.* agt. *Rhodes* (18 *Barb.* 100).

In that case the husband had property sufficient to maintain and support his wife, and the court held the doctrine hat the superintendents could not maintain an action at law against the husband, but must pursue their remedy by seiz- ing the property of the husband by virtue of their authority under the statute. (1 *R. S.* 614, 615 ; § 1 to 14.)

That case differs from the one at bar in the fact that this is an action on a contract of idemnity where the obligation is to perform some specific thing, and to save the obligee from all liability for the support of his wife, and the contract was broken when the defendant failed to do the specific act. (*Gilbert* agt· *Wiman*, 1 *Com.* 550.)

Where a party has an indemnity not only against actual damages and expenses, but against any liability for damages and expenses, he need not wait to commence his suit until he has actually paid such damages. (*Rockfeller* agt. *Donnelly*, 8 *Cow.* 639, 640 ; *Chace* agt. *Hinman*, 8 *Wend.* 452 ; *Johnson* agt. *Hilton*, 10 *John.* 549.)

This is a case where the court may decree a specific performance on the part of the defendant, so as to exonorate the plaintiff from his liability to support his wife on the principle of *quia timet*. (2 *Story's Equity*, 850 ; 8 *John.'s Ch.* 406.)

The contract in action contains affirmative covenants for specific things, and its non-performance was a breach, and the legal liability of the obligor the measure of damages. (*Gilbert* agt. *Wiman*, 1 *Com.* 562 ; *Thomas* agt. *Allen*, 1 *Hill*, 145 ; *Churchill* agt. *Hunt*, 3 *Denio*, 321.)

The covenants were to save harmless from all liability of the plaintiff for the maintenance and support of his wife, and also to support her in a proper manner. And if the conduct of the defendant or his family was such as to make it

improper for the wife of the plaintiff to remain in the defendant's house, it was a breach of the conditions of the defendant's bond, and the wife of the plaintiff had a right to leave the house of defendant and procure board and clothes elsewhere, and the defendant was liable therefor; and under such circumstances, no demand of board and clothing of defendant was necessary. (*Hawley* agt. *Morton*, 23 *Barb.* 255; *Shaffer* agt. *Lee*, 8 *Barb.* 412.)

II. The referee found that the plaintiff had promised to pay the superintendents of the poor whatever sum they had expended for the support of plaintiff's wife, but held as a question of law, that the promise having been made subsequent to furnishing the support to the wife, there was no consideration for the promise.

This clearly was error.   It is a well settled rule of law, that a moral obligation is a good consideration for an express promise, and has never been questioned in cases where the party promising has been benefited.   (*King* agt. *Butler*, 15 *Johns.* 281; *Livingston* agt. *Rogers*, 1 *Caines R.* 584, 585; *Hicks* agt. *Burnham et al.*, 10 *Johns.* 243; *Comstock* agt. *Smith*, 7 *Johns.* 88; 1 *Saund.* 264; 2 *East.* 506; *Overseers of the Poor of Tioga* agt. *Overseers of the Poor of Seneca*, 13 *Johns.* 380.)

In an action by the father of an apprentice against the master for necessaries furnished the apprentice, it appears that the latter, very ill, went to his father's house against his master's will, and the master forbade the father from incurring any expenses.   The apprentice died, however, and after his death, defendant promised to pay reasonable expenses.   Held that though the necessaries were furnished contrary to defendant's desire at the time, yet a subsequent discovery of the necessity arising from the illness of the boy, or the actual saving of expenses to the defendant, were considerations sufficient to support the promise. (*Mayors Ct* 1502; *Black* agt. *Hardenbook, Liv. Jd. Opin.* 23.)

Tha plaintiff was benefited by the support of his wife.

The superintendents did nothing more than to supply the wife with those necessaries which the husband was legally bound to furnish, but which he had neglected to furnish, and had left her without any home or means of support and a charge on the county. His property was liable to be seized, and himself arrested if found in the county, and compelled to support his wife. (*Pomeroy* agt. *Wells*, 8 *Paige Ch.* 406.)

III. The husband is bound to support his wife when the two are separated by mutual consent, the same as when they are living in co-habitation, and even the same as when they are separated through his fault. (*Bishop on Marriage*, §§ 578, 579; *Lockwood* agt. *Thomas*, 12 *Johns.* 248.)

That he is under the highest moral obligation to support his wife according to his circumstances in life. The husband is under a natural and moral obligation to support his wife; and the courts may presume a promise founded on such moral obligation, especially in such cases of necessity as the facts in this case show. The obligations and duties of husband and wife are derived from a higher source than any contract of which the parties are capable of making, and, as to these, cannot be controlled by any contract they can make. By their own agreements, they cannot increase or lessen these duties.

The superintendent furnished the necessaries which the plaintiff was bound to supply, and he subsequently promised to pay, and his implied promise or duty is sufficient consideration for the promise. (*Doty* agt. *Wilson*, 14 *Johns.* 378; *Ingraham* agt. *Gilbert*, 20 *Barb.* 151.)

IV. The superintendents of the poor of the county are the public agents and trustees of the county in respect to their poor, and have, without any express authority from the legislature, the capacity to sue commensurate with their public trusts and duties. The statutes give them a remedy in case the husband refuses to support his wife, and that is a cumulative remedy, and does not take away a common law right, to maintain an action of assumpsit for the expenses

incurred. (*Overseers of the Poor of Tioga* agt. *Overseers of the Poor of Seneca*, 13 *John.* 380 ; *Overseers of the Poor of Pitts-town* agt. *Overseers of the Poor of Plattsburg*, 18 *John.* 407 ; *Overseers of the Poor of Courtland* agt. *Birdsell*, 1 *Cow.* 260 and 673 ; *Flower* agt. *Allen*, 5 *Cow.* 666.)

The plaintiff being a non-resident of this state, and his wife having been deprived of a home by the wrongful acts of the defendant, she could have maintained an action against the superintendents of the poor in case they had neglected to furnish her with the necessaries of life. (*Flower* agt. *Allen*, 5 *Cow.* 658.)

The case of *Norton* agt. *Rhodes* (18 *Barb.* 100), was decided on the theory, that the husband was a resident of this state and having means to support his wife, and property liable to be seized in case he refused to support his wife. The court in this case held, that the superintendents could not declare her a pauper and maintain her as such, and charge the husband with such support, but must pursue their remedy under the statute, as in the case of an absconding husband.

When the wife is refused necessaries by her husband the courts have held in other states, under similar statutes to ours, that the town, through its officers having charge of the poor can supply them, and oblige the husband in an action at law to refund the money advanced. (*Alna* agt. *Plummer*, 4 *Greenl.* 258 ; *Howard* agt. *Whetstone*, 10 *Ohio*, 365 ; *Monson* agt. *Williams*, 6 *Gray*, 416 ; *Rumney* agt. *Keys*, 7 *N. H.* 571.)

V. This action is brought to recover damages for the breach of the bond mentioned in the complaint, and also for breach of the bond, and therefore is properly brought in the name of the obligee. It is not for money held by defendant as trustee, and the wife can have no interest whatever in the result of this action.

VI. In giving construction to the agreement of the parties, the bond and mortgage should be construed together. The

rule is where one writing or instrument refers to another, either tacitly or expressly, both are to be construed together and one may correct an erroneous description in the other, explain it or even add to or vary it. *(Jackson* agt. *Bowen,* 7 *Cow.* 13; *Jackson* agt. *Freer,* 17 *Johns.* 29; 3 *Dana,* 21.)

W. W. HOLT, *for defendant.*

*By the court,* MARVIN, J.   It was said upon the argument that *Norton* agt. *Rhodes* (18 *Barb.* 100), was controlling with the referee in this case.

If so, I think the referee misapprehended or misapplied the case.

Norton and others, as superintendents of the poor, brought that action against the husband to recover for the boarding, &c. of his wife by the county.   The action was attempted to be sustained upon the common law relating to husband and wife.   It was held, that the superintendents of the poor could not, as public officers of the county, interfere between husband and wife by supporting the latter, entitle themselves as such officers to maintain an action against the husband. It was said in the opinion, that if an individual saw fit to furnish necessaries to a wife and resort to an action against the husband for compensation, upon the ground of ill-usage, &c., he may undoubtedly do so, and a court will hear the proofs and allegations of the parties, and decide in accordance with the well settled principles of the common law.   It might be decided that the husband was not in fault, and if so, then the plaintiff could not recover.

In the present case, the plaintiff made an arrangement with the defendant to support his wife, founded upon a valuable consideration.   The agreement is evidenced by a bond, the condition contains recitals of the agreement and consideration, the latter being $350, to be used and appropriated by him (the obligor) for the benefit of said Frances Scheive,

and further agreeing to keep and maintain and forever sup
port the said Frances Scheive.

Then follows the condition, "that the said Kaiser shall
from time to time, use and apply the aforesaid money for the
benefit and support and maintenance of said Frances Scheive
as the same shall be necessary, and shall keep and save said
Frederick Scheive forever harmless on account of the sup-
port and maintenance of said wife, said Frances Scheive, and
shall save and prevent said Frederick from any liability for
the support and maintenance of said Frances.

The referee has found that the defendant failed to support
and maintain Frances. He finds that she was justified in
departing from the defendant's house, and she was justified
in refusing to return to his house.

Here is a clear finding of a breach in the agreement noted.
The referee seems to have confined his inquiry to the condi-
tions in the bond to keep the plaintiff harmless, and to save
and prevent him from any liability for the support, &c., of
Frances, and coming to the conclusion that the plaintiff was
not liable to the overseers of the poor or the superintendents,
notwithstanding his conditional promise to pay; he decided
that there had been no breach of the covenant of the defend-
ant to the plaintiff in the bond. In this, I think, he erred.

The recital in the condition of the bond contains an express
agreement by Kaiser to keep and maintain and forever sup-
port the said Frances Scheive. This agreement or covenant
was broken. But it is said that this covenant is only to be
found in one of the recitals in the conditions of the bond, and
that the real conditions are those following, relating to the
application of the $350, for the benefit and support, &c., of
Frances, and to keep harmless, &c.; and that the obligations
could only be enforced in case of a breach of the conditions
thus specified; that it could not be enforced for a breach of
the covenant "to keep and maintain and forever support."
I am inclined to think this would be too narrow a construc-
tion. It seems on consulting the complaint, that the pleader

Scheive agt. Kaiser.

has only noticed the conditions following the recitals, and has omitted to notice the covenant " to keep and maintain and forever support," &c.

The reference to the bond in the complaint is quite general. It does not notice all the provisions in it. The bond was put in evidence, and I think putting a liberal construction upon the complaint, its allegations are broad enough to enable the plaintiff to avail himself of all its provisions. But apply the strictest rules to the pleadings and regard the mortgage as only given to secure the payment of the principal and interest mentioned in the conditions of said bond, to the use, benefit and maintenance of said Francis Scheive, as alleged in complaint, and there was a clear breach of the conditions proved.

There is no pretence that the defendant from time to time, used and applied the $350 " for the benefit and support and maintenance of Frances Scheive as the same should be necessary." The cause of action was established, and the referee erred in dismissing the complaint. There is no foundation for the objections that the action was improperly brought by the plaintiff and in his name.

The judgment must be reversed, and there must be a new trial, and the question of costs is reserved to the final trial.

All the judges concurred.

Judgment reversed.